UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

JOHN RYDER,

       Plaintiff,                 Case No:

v.

LIFESTANCE HEALTH GROUP, INC.,
and LIFESTANCE HEALTH, INC.,

       Defendants.

_____/

## COMPLAINT

Plaintiff JOHN RYDER files suit against Defendants LIFESTANCE HEALTH GROUP, INC. and LIFESTANCE HEALTH, INC., and alleges:

## JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction over all claims asserted in this pleading by virtue of 28 U.S.C. § 1332 (diversity jurisdiction) as complete diversity exists between the Plaintiff and the Defendants.

2.    Venue is proper in this District based on 28 U.S.C. § 1391 because the acts giving rise to the issues involved in this lawsuit occurred within the boundaries of this District.  Specifically, LifeStance employed Dr. John Ryder to work at a facility in Maitland, Florida where all the acts and omissions underlying this lawsuit occurred.

## PARTIES INVOLVED IN THIS LAWSUIT

3.      Dr. Ryder is a board-certified psychiatrist whose principal residence is in in Seminole County. Practicing as a part of Florida Behavioral Health, Dr. Ryder is skilled at addressing a wide array of mental health concerns, including depression, anxiety, autism, mood disorders, and psychological trauma.

4.      Dr. Ryder received his medical degree from the University of Florida, and he completed his residency in psychiatry and fellowship in child and adolescent psychiatry at Dartmouth-Hitchcock Medical Center in Lebanon, New Hampshire. Dr. Ryder is certified in psychiatry by the American Board of Psychiatry and Neurology.

5.      LifeStance Health Group, Inc. ("LSHG") is a Delaware corporation that maintains its principal place of business at 4800 North Scottsdale Road, Suite 600, Scottsdale, Arizona.

6.      LSHG is a publicly traded corporation whose securities are listed and traded on The Nasdaq Stock Market under the symbol LFST.

7.      According to its 2022 Form 10-K, LSHG was formed for the purpose of completing a public offering and related transactions to carry on the business of LifeStance TopCo, L.P. and subsidiaries

8.      LifeStance Health, Inc. ("LSH") is a Delaware corporation that maintains its principal place of business at 10655 N.E. 4th Street, Suite 901, Bellevue, Washington, 98004.

9.      LSH is a wholly owned subsidiary of LSHG and has had its operations consolidated and merged into those of LSHG because of the initial public offering in January 2021, thereby making LSHG the successor in interest of all LSH's obligations including being deemed a joint employer of DR. RYDER.  (LSH and LSHG shall be referred to collectively as "LifeStance").

## OVERVIEW OF LIFESTANCE AND ITS BUSINESS MODEL

10.      LifeStance is a mental healthcare company focused on providing evidence-based, medically driven treatment services for children, adolescents, and adults suffering from a variety of mental health issues in an outpatient care setting, both in-person and through its digital health telemedicine offering.

11.      LifeStance promotes that it is committed to state-of-the-art clinical excellence, to partnership and collaboration with other treating health care providers to ensure continuity of care, to the utilization of data to individually tailor services for continual improvement in outcomes, and to empowering patients to make informed choices and help them achieve their goals.

12.      According to its public filings with the Securities and Exchange Commission, LifeStance describes itself as follows:

> We employed 4,790 licensed mental health clinicians through our subsidiaries and affiliated practices in 32 states as of December 31, 2021. Our clinicians offer patients a comprehensive suite of mental health services, spanning psychiatric evaluations and treatment, psychological and neuropsychological testing, and individual, family and group therapy. We treat a broad range of mental health conditions, including anxiety, depression, bipolar disorder, eating disorders, psychotic disorders and post-traumatic stress disorder.

Patients can receive care virtually through our online delivery platform or in-person at one of our conveniently located centers. Through our more than 250 payor relationships, including national agreements with multiple payors, patients can utilize their in-network benefits when they receive care from one of our clinicians, enhancing access and affordability.

13.     LifeStance states that it generates "revenue on a per-visit basis when a patient receives care from one of our clinicians. Depending on the state, our clinicians are either employed directly through our subsidiaries or through our affiliated practices, for which we manage day-to-day operations pursuant to long-term management services contracts."

14.     LifeStance claims that its revenue is generally derived from in-network insurance coverage, pursuant to which its subsidiaries or affiliated practices are reimbursed for patient services.

15.     LifeStance contracts with payors are typically structured as fee-for-service arrangements, with negotiated reimbursement rates for its clinical services. With respect to its affiliated practices, LifeStance's revenue is derived from management fees negotiated under its management services contracts.

<u>LIFESTANCE'S RECRUITMENT OF DR. RYDER</u>

16.     LifeStance recruited Dr. Ryder to work for the corporation at its facility located at 260 Lookout Place, Suite 101, Maitland, Florida 32751.

17.     LifeStance claims that its Maitland office is a full-service mental health care clinic where . . . "we help clients lead healthier, more fulfilling lives by providing access to trusted, affordable, and personalized mental healthcare. Our psychiatrists,

therapists and psychologists offer in-person and remote appointments. All therapy, counseling, psychiatry, and mental health services professionals are licensed by the state of Florida."

18.     LifeStance represented to Dr. Ryder, and Dr. Ryder accepted those representations, that he would receive a minimum annual salary of $200,000.00 USD, with the opportunity to earn additional income based on the number of patients he treated, bonuses, and other income for supervising the staff that LifeStance planned to place at the Maitland facility. *Exhibit 1* is a copy of the information that LifeStance published about the position that it ultimately offered Dr. Ryder.

19.     Dr. Ryder was never told, nor did he ever suspect, that he would become an indentured servant of LifeStance or that LifeStance expected him to pay it for the privilege of working at its facility. In other words, and like most employees, Dr. Ryder expected to be paid for his services, he did not expect to incur a debt to his master for the privilege of working for the master.

20.     Dr. Ryder was told by Matt Barton (Vice President of Practice Development for LifeStance) that LifeStance would be solely responsible for all patient acquisitions and that Dr. Ryder's sole obligation was to treat patients at the facility.

21.     Based on the representations made by Mr. Barton and other members of LifeStance's human resources department, Dr. Ryder accepted the position, sold his home in New Hampshire, and relocated to Central Florida to work for LifeStance.

22.     LifeStance obliged Dr. Ryder to sign its provider employment agreement, which purportedly lays out the terms and conditions of his employment and the

compensation that he would receive as an employee of LifeStance.   A copy of Dr. Ryder's employment contract with LifeStance is attached and marked as *Exhibit 2*.

## THE BAD ACTS LEADING UP TO THE FILING OF THIS LAWSUIT

23.     LifeStance failed to comply with its obligations to compensate Dr. Ryder under the terms of his provider employment agreement, LifeStance's coporate policies and procedures, or federal and Florida state laws.   Moreover, LifeStance failed to compensate Dr. Ryder in the same manner as it chose to compensate Caucasian physicians performing the same exact services as Dr. Ryder.  For example,

> a.     LifeStance failed to pay Dr. Ryder all compensation legally due and promised under the terms of his provider employment agreement, including his percentage of amounts billed to insurance, compensation for supervising members of LifeStance's staff.

> b.     LifeStance made improper deductions from Dr. Ryder's compensation, which includes its unlawful decision to garnish his wages to illegally collect on an ersatz debt in favor of LifeStance that Dr. Ryder never agreed to incur.

> c.     LifeStance made numerous improper unilateral revisions of Dr. Ryder's paystubs under the guise of a correction, which often created improper and additional tax liability for him.

> d.     LifeStance wrongfully withheld (and failed to pay) the entirety of compensation due and payable to Dr. Ryder for an entire month; in other words, Dr. Ryder received no compensation for hours worked during the entire month of May 2021.

e.      LifeStance intentionally and wrongfully misclassified income on Dr. Ryder's paystubs, often suggesting that he was being compensated (and taxed), when in fact the corporation was surreptitiously generating an enormous ersatz debt obligation that it expected Dr. Ryder to satisfy.

f.      LifeStance made several errors in terms of payroll related taxes of compensation paid to Dr. Ryder, including double taxing his income.

24.     In addition to its failure to compensate Dr. Ryder properly and lawfully, LifeStance surreptitiously and unilaterally created a debt obligation against Dr. Ryder and in its favor, then engaged in wrongful debt collection practices to collect that ersatz debt.

## GENERAL ALLEGATIONS

25.     Dr. Ryder has engaged the law firm of éclat law, PA to serve as its lead trial counsel and he is obligated to compensate trial counsel for services rendered in connection with prosecuting his rights as alleged herein.

26.     All conditions precedent to filing this lawsuit have occurred, have expired, or have been effectively waived.

## COUNT I

27.     Dr. Ryder realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 as if fully set forth herein.

28.     This is a cause of action for unpaid wages and damages under the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq.

29.     LifeStance, at all times material to this claim, was Dr. Ryder's direct employer within the meaning of FLSA 29 U.S.C. §203(d).

30.     Dr. Ryder, at all material times hereto, was an "employee" of LifeStance within the meaning of FLSA, 29 U.S.C. § 203(e)(1).

31.     Dr. Ryder was hired by LifeStance to perform duties on behalf of and for the benefit of his employer consistent with his employer's overall business platform and objectives.

32.     By failing to pay Dr. Ryder minimum wages, overtime wages, failing to outright pay complete wages free and clear as required, LifeStance has violated violate Sections 206, 207, and 215 of the FLSA, amongst other laws, and such conduct was willful within the meaning of the FLSA.

33.     LifeStance understood it had an affirmative obligation to pay Dr. Ryder for all hours that he spent working for the benefit of his employer, yet it intentionally and routinely failed to pay such compensation as described above.

34.     LifeStance maintained a culture of toxicity and a hostile work environment during, after, and before the applicable period at issue, which included, but was not limited to, the indentured servitude described previously in this pleading.

35.     Instead of lawfully paying its employees, LifeStance established and maintained systems, policies, and procedures that were intentionally designed to avoid paying employees their earned wages as detailed in the paragraphs above.

36.     LifeStance has engaged in a widespread systematic pattern, policy, and practice of violating the FLSA, as detailed throughout this Complaint.

37.    Dr. Ryder is entitled to be paid at least minimum wage for all hours worked during the workweek pursuant to FLSA 29 U.S.C. § 206.

38.    LifeStance violated FLSA 29 U.S.C. § 206 by failing to pay Dr. Ryder minimum wages for all hours worked, as described above, and caused Dr. Ryder to suffer lost wages and interest thereon.

39.    Similarly, there were several instances where LifeStance simply did not pay wages owed to Dr. Ryder, and hence, back-wages are owed.

40.    Due to LifeStance's misconduct and malevolent employee compensation practices, Dr. Ryder did not earn wages at the required minimum wage rate or overtime rates for all his hours worked during one or more work weeks.

41.    LifeStance knowingly and willfully disregard carried out its illegal pattern or practice of failing to pay proper wages as compensation.

42.    As a result of LifeStance's intentional, willful, and unlawful acts in refusing to pay Dr. Ryder minimum wages, and wages in general (i.e., no payment was made, hence back-pay is owed) for one or more workweeks, Dr. Ryder has suffered damages, and incurred reasonable attorneys' fees and costs as provided in the FLSA statute.

43.    As a result of LifeStance's willful violation of FLSA § 206, 207, and 215, Dr. Ryder is entitled to recover the full amount of any unpaid back wages unlawfully withheld, and any damages experienced due to Defendant's retaliatory acts and liquidated damages as per 29 U.S.C. § 216 and other provisions within the FLSA statute.

44.     Dr. Ryder is entitled to recover from LifeStance his unpaid minimum wages/overtime wages, damages for unreasonably delayed payment of wages, and any damages experienced due to Defendant's retaliatory acts, liquidated damages or pre-judgment interests, reasonable attorneys' fees, and costs and disbursements pursuant to the FLSA statute.

45.     Because LifeStance's violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

WHEREFORE, JOHN RYDER demands judgment against LIFESTANCE HEALTH GROUP, INC. and LIFESTANCE HEALTH, INC. for all remedies available under Fair Labor Standards Act, 29 U.S.C. § 201, et. seq, together with all other relief to which Plaintiff may be entitled at law or in equity.

## COUNT II

46.     Dr. Ryder realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 as if fully set forth herein.

47.     Pursuant to 29 C.F.R. § 531.35, wages cannot be considered to have been paid by the employer to the employee unless they are paid finally and unconditionally or "free and clear."

48.     Further, wage requirements will not be met where the employee is required to "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wages delivered to the employee.

49. Kickbacks include but are not limited to direct reductions in employee's pay checks for the benefit of the employer, amongst other things.

50. LifeStance routinely made arbitrarily deductions to Dr. Ryder's pay without reason or description—a benefit kicked-back directly to Defendants. For example, LifeStance engaged in the following misconduct:

    a. LifeStance, without the express agreement of Dr. Ryder, deducted portions of his earned wage claiming that the wages were an "advance" and not income earned for the services that Dr. Ryder provided.

    b. LifeStance failed to pay Dr. Ryder for supervising staff members as required by his provider employment agreement and LifeStance's corporate policies and procedures.

    c. LifeStance frequently misclassified income, paying Dr. Ryder less money than what he was entitled to receive.

    d. LifeStance frequently did not pay Dr. Ryder his percentage of all items billed to insurance for patients he treated[1].

51. As such, Dr. Ryder was routinely forced to kicked-back his wages to LifeStance, which consequently benefitted the employer.

52. LifeStance's arbitrary and unlawful deductions of Dr. Ryder's earned wages resulted in LifeStance's willful violation of 29 C.F.R. § 531.35 as Dr. Ryder's pay was not provided "free and clear" of other conditions.

---

[1] LifeStance periodically provided Dr. Ryder with an "Output Report," which identifies the patient encounters, the charge code, their insurance, the Company's Orlando, FL Region Compensation Schedule amount for that insurance carrier (not the dollar amount LifeStance billed to or received from the insurance company), the percentage and dollar amount that Dr. Ryder was to receive because of each encounter based upon the Company's Orlando, FL Region Compensation Schedule. These Output Reports did not include the total amount of debt owed until March 2021, just two months before he ended employment with LifeStance.

53. As a direct and proximate result of the kickbacks described throughout this Complaint, Dr. Ryder was damaged because he did not enjoy the earned benefit of his whole paycheck, without any kickbacks to LifeStance.

WHEREFORE, JOHN RYDER demands judgment in his favor and against the two Defendants for all remedies available under 29 C.F.R. § 531.35 including compensation that was kicked-back to the Defendants, plus interest, attorneys' fees, and cost, including any other remedy provided and applicable under law.

## COUNT III

54. Dr. Ryder realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 as if fully set forth herein.

55. This is a claim against LifeStance for breach of contract related to compensation that it was obligated to pay Dr. Ryder pursuant to the terms of his employment agreement with LifeStance described above.

56. As stated above, LifeStance has failed to pay Dr. Ryder all compensation that is due him under the terms of his employment agreement, which constitutes a material breach of that employment agreement.

57. Dr. Ryder is entitled to receive, under the terms of his employment agreement with LifeStance, compensation that is due and owing, together with attorneys' fees, court costs, and other remedies available under the terms of his employment agreement with LifeStance.

58.    LifeStance's breach of its employment agreement with Dr. Ryder is the direct and proximate cause of the damages that he has suffered.

WHEREFORE, JOHN RYDER demands judgment in his favor and against the two Defendants for all remedies available under the terms of his employment agreement with LifeStance including interest, attorneys' fees, and cost, including any other remedy provided and applicable under law.

## COUNT IV

59.    Dr. Ryder realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 as if fully set forth herein.

60.    Dr. Ryder conferred monetary and other business-related benefits upon LifeStance, who had knowledge thereof, by performing services on LifeStance's behalf, such as the establishment of business relationships, performing recruitment services on behalf of LifeStance, and promoting LifeStance to increase profits for LifeStance.

61.    LifeStance voluntarily accepted the benefits provided by Dr. Ryder (described above), retained the benefits, and enjoyed those benefits.

62.    LifeStance was unjustly enriched, at the expense of Dr. Ryder.

63.    The circumstances render LifeStance's retention of the benefit inequitable unless LifeStance pay Dr. Ryder the value of the benefit conferred.

64.    Dr. Ryder is entitled to damages because of LifeStance's unjust enrichment.

WHEREFORE, JOHN RYDER demands judgement in his favor and against both Defendants for damages, for attorneys' fees and costs, plus interest and for such other and further relief this Court deems just, equitable, and proper.

## COUNT V

65.     Dr. Ryder realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 as if fully set forth herein.

66.     This is an action against the Defendants for violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq. (the "Federal Act"), stemming from the Defendants' acts and omissions concerning a fraudulent debt fabricated by the Defendants as described herein.

67.     On 26 March 2021, Dr. Ryder gave notice of resignation from employment with LifeStance effective 28 May 2021.

68.     One of the primary reasons that Dr. Ryder decided to end his employment with LifeStance (in addition to the issues surrounding his compensation) was the proscribed debt LifeStance unilaterally created, coupled with the stress that LifeStance created to collect this proscribed debt.

69.     Attached as *Exhibit 3* is a copy of a demand letter from LifeStance to Dr. Ryder for the proscribed debt.

70.     The acts and omissions underlying this claim include, but are not limited to the following:

a.  Failing to disclose, at the time when LifeStance made the job offer to Dr. Ryder, that the accumulation of debt would be associated with his employment, which he would be expected to pay.

b.  Failing to disclose, at the time when LifeStance made the job offer to Dr. Ryder, the material terms, and conditions of the debt obligation he would incur if he accepted the position with LifeStance.

c.  Failing to properly and timely disclose the balance of the debt, the methodology used to calculate the amount of the alleged debt as it accumulated each month, the interest rate, the terms for repaying the alleged debt, the penalties for nonpayment, and the accumulation of interest and penalties, consistent with the collection of any consumer debt.

d.  Failing to properly disclose deductions from Dr. Ryder's compensation to pay down the balance of the proscribed debt, essentially constituting an illegal garnishment of Dr. Ryder's wages.

e.  Engaging in hostile and improper debt collection practices, communications, and other actions to collect the proscribed debt from Dr. Ryder.

71.  LifeStance's efforts to collect the proscribed debt were so onerous that Dr. Ryder was forced to take a temporary leave of absence from work to deal with the mental stress and anguish he was experiencing because of his indentured servitude to LifeStance and LifeStance's behavior to collect the proscribed debt.

72.     LifeStance continued its unlawful debt collection practices after Dr. Ryder resigned from his employment, including violating the automatic stay under the U.S. Bankruptcy Code when Dr. Ryder was forced to file for bankruptcy because of the proscribed debt and LifeStance's unlawful actions to collect that debt.

73.     LifeStance's unfair and unlawful debt collection practices did not end once Dr. Ryder declared bankruptcy – LifeStance continued its wrongful behavior, continued to intentionally harass Dr. Ryder, and continued to increase the balance of the proscribed debt even though Dr. Ryder was no longer employed by LifeStance.

74.     LifeStance is a debt collector within the meaning of the Federal Act.

75.     A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, which is exactly what LifeStance has done to Dr. Ryder.

76.     LifeStance's acts and omissions constitute a violation of the Federal Act and are the direct and proximate cause of the damages that Dr. Ryder has suffered as a result.

WHEREFORE, JOHN RYDER demands judgement in his favor and against both Defendants for all damages and remedies available under 15 U.S.C. 1692 et seq., and for such other and further relief this Court deems just and proper.

## COUNT VI

77.     Dr. Ryder realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 as if fully set forth herein.

78.    This is an action against the Defendants for violation of the Florida Consumer Collection Practices Act, Section 551.55 et seq., Florida Statues (the "Florida Act"), stemming from the Defendants' acts and omissions concerning a fraudulent debt contrived by the Defendants as described herein.

79.    On 26 March 2021, Dr. Ryder gave notice of resignation from employment with LifeStance effective 28 May 2021.

80.    One of the primary reasons that Dr. Ryder decided to end his employment with LifeStance (in addition to the issues surrounding his compensation) was the proscribed debt LifeStance unilaterally created, coupled with harassing methods used by LifeStance created to collect this purported debt.

81.    Attached as *Exhibit 3* is a copy of a demand letter from LifeStance to Dr. Ryder for the proscribed debt

82.    The acts and omissions underlying this claim include, but are not limited to the following:

    a.   Failing to disclose, at the time when LifeStance made the job offer to Dr. Ryder, that the accumulation of debt would be associated with his employment, which he would be expected to pay.

    b.   Failing to disclose, at the time when LifeStance made the job offer to Dr. Ryder, the material terms, and conditions of the debt obligation he would incur if he accepted the position with LifeStance.

    c.   Failing to properly and timely disclose the balance of the debt, the methodology used to calculate the amount of the alleged debt as it

accumulated each month, the interest rate, the terms for repaying the alleged debt, the penalties for nonpayment, and the accumulation of interest and penalties, consistent with the collection of any consumer debt.

     d. Failing to properly disclose deductions from Dr. Ryder's compensation to pay down the balance of the proscribed debt, essentially constituting an illegal garnishment of Dr. Ryder's wages.

     e. Engaging in hostile and improper debt collection practices, communications, and other actions to collect the proscribed debt from Dr. Ryder.

83.    LifeStance's efforts to collect the proscribed debt were so onerous that Dr. Ryder was forced to take a temporary leave of absence from work to deal with the mental stress and anguish he was experiencing because of his indentured servitude to LifeStance and LifeStance's behavior to collect the proscribed debt.

84.    LifeStance continued its unlawful debt collection practices after Dr. Ryder resigned from his employment, including violating the automatic stay under the U.S. Bankruptcy Code when Dr. Ryder was forced to file for bankruptcy because of the proscribed debt and LifeStance's unlawful actions to collect that debt.

85.    LifeStance's unfair and unlawful debt collection practices did not end once Dr. Ryder declared bankruptcy – LifeStance continued its wrongful behavior, continued to intentionally harass Dr. Ryder, and continued to increase the balance of the proscribed debt even though Dr. Ryder was no longer employed by LifeStance.

86.    LifeStance is a debt collector within the meaning of the Florida Act.

87.     A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, which is exactly what LifeStance has done to Dr. Ryder.

88.     LifeStance's acts and omissions constitute a violation of the Florida Act and are the direct and proximate cause of the damages that Dr. Ryder has suffered as a result.

WHEREFORE, JOHN RYDER demands judgement in his favor and against both Defendants for all damages and remedies available under Section 551.55 et seq., Florida Statutes, and for such other and further relief this Court deems just and proper.

## COUNT VII

89.     Dr. Ryder realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 as if fully set forth herein.

90.     This is an action against the Defendants for tortious interference with Dr. Ryder's beneficial business relationship with various health insurance providers, which has interfered with his ability to perform services for his patients and the compensation he has received for the services he has performed for patients while working for his new employer.

91.     On 26 March 2021, Dr. Ryder gave written notice of resignation from employment with LifeStance effective 28 May 2021.

92.     Consequently, LifeStance has known that as of 29 May 2021, Dr. Ryder was no longer its employee, and they were no longer entitled to list him as a LifeStance

provider for purposes of receiving compensation for his services from various insurance companies.

93.     The forgoing notwithstanding, LifeStance has continued to list and identify Dr. Ryder as its employee and provider with various insurance companies.

94.     LifeStance's decision to continue to identify Dr. Ryder as a provider for LifeStance after the termination of his employment, has interfered with his current employer's ability to bill various insurance companies for the services that he provides to his current patients, causing a hardship for the patient, Dr. Ryder, and Dr. Ryder's current employer.

95.     For example, since Dr. Ryder left LifeStance, there have been numerous instances where he has not received the full amount of compensation that he should receive from insurance companies for the services rendered to his current patients, since he is listed as a provider at multiple offices, i.e., LifeStance and his current employer.

96.     Dr. Ryder has suffered harm as a direct and proximate cause of LifeStance's tortious interference.

WHEREFORE, JOHN RYDER demands judgement in his favor and against both Defendants for damages, for attorneys' fees and costs, plus interest and for such other and further relief this Court deems just and proper.

COUNT VIII

97.    Dr. Ryder realleges and incorporates by reference the allegations contained in paragraphs 1 through 26 and 79 through 85 as if fully set forth herein.

98.    This is an action against the Defendants for intentional infliction of emotional distress under Florida law.

99.    The ersatz or proscribed debt obligation described above, together with LifeStance's unlawful acts also described above, constitute the type of outrageous behavior necessary to assert a claim for intentional infliction of emotional distress under Florida law.

100.    LifeStance's behavior, as described above, was deliberate or reckless and inflicted severe emotional distress on Dr. Ryder causing him to suffer mentally, emotionally, and psychologically.

101.    Dr. Ryder suffering was severe and included him having to take a medical leave from work, having to seek therapy for mental and emotional anguish, emotional, phycological, and financial distress from having to file for bankruptcy, and other damage he suffered which will be presented to a jury at trial.

102.    LifeStance's actions, as described herein, are the direct and proximate cause of the damages for which Dr. Ryder seeks to be compensated.

WHEREFORE, JOHN RYDER demands judgement in his favor and against both Defendants for all damages and remedies available under Florida law, including

punitive damages, and for such other and further relief this Court deems just and proper.

DEMAND FOR JURY TRIAL

Dr. John Ryder respectfully requests a jury trial on all triable issues above.

RESERVATION OF RIGHT TO AMEND COMPLAINT

Dr. John Ryder reserves the right to file amendments to this complaint as may be appropriate.

Respectfully submitted,

éclat law PA
Post office Box 161850
Altamonte Springs, Florida 32716
Phone: (407) 636-7004
Plaintiff's Counsel

_____
Kevin K. Ross-Andino, FBN 66214
kevin.ross@eclatlaw.com
Jolynn M. Falto, FBN 1002743
Jfalto@eclatlaw.com
Nikki J. Pappas, FBN 126355
nikki.pappas@eclatlaw.com
Crisol Lopez-Palafox, FBN 1031282
crisol.lopezpalafox@eclatlaw.com